UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Fulton and Causey
Argued by teleconference

KEITH ALAN BRADSHAW

                                                    MEMORANDUM OPINION*
v.        Record No. 1782-22-2                      JUDGE CLIFFORD L. ATHEY JR.
                                                    FEBRUARY 27, 2024

ESTATE OF THOMAS OWENS WATSON

FROM THE CIRCUIT COURT OF NOTTOWAY COUNTY
Paul W. Cella, Judge

Keith Alan Bradshaw, *pro se*.

(Clay L. Macon; Konstantine Kastens; Glasser & Macon, P.C., on
brief), for appellee. Appellee submitting on brief.

(Linda M. H. Tomlin; The Law Office of Linda M. H. Tomlin,
PLLC), Guardian ad litem for appellant.


Keith Alan Bradshaw ("Bradshaw") appeals from an October 24, 2022 order entered in

the Nottoway County Circuit Court ("circuit court") terminating a trust for which Bradshaw was

a beneficiary. The order awarded attorney fees and costs to the trustee and guardian ad litem

fees to the attorney appointed to represent Bradshaw. These awards were to be paid from the

proceeds resulting from terminating the trust. Bradshaw, *pro se*, contends that the circuit court

erred by awarding attorney fees and costs to the trustee and guardian ad litem from the proceeds

resulting from terminating the trust. We disagree, and for the following reasons affirm the circuit

court's order.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

## I. BACKGROUND

In 2003, Thomas Owens Watson ("Watson") executed his last will and testament, which created a trust containing $50,000 for the sole benefit of Bradshaw. The will named Bradshaw's brother, Steven K. Bradshaw ("Steven/trustee"), as trustee of the resulting trust. The trust created by the will instructed Steven to utilize the trust assets to purchase certain real estate for the benefit of his brother; however, in the event that said real estate could not be purchased within 20 years, he was to distribute the trust principal and interest to his brother. Watson's will also included the following provisions, relevant to this appeal. Article I stated: "I direct that all of my lawful unsecured debts, funeral expenses, expenses of my last illness, expenses of administration and taxes owed by my estate whether as a consequence of my death or otherwise, be paid out of my residuary estate without apportionment among the beneficiaries of my estate." Article III of the will stated: "[t]o the extent permitted by law, neither the principal nor income [of the trust] shall be liable for the debts of any beneficiary," before concluding that "[i]n addition to the powers granted by law, I grant to my Trustee those powers set forth in Section 64.1-57 of the Code of Virginia, as in force from time to time, and I incorporate that Code Section in said trust by this reference." In addition, Article V devised the entirety of Watson's residuary estate to Steven, who was also nominated in Watson's will to serve as executor pursuant to Article VI. Following Watson's death, Steven assumed his duties as both executor of the will and trustee of the resulting trust.

In his capacity as trustee, Steven filed a petition in the circuit court requesting aid and guidance because his brother, Bradshaw, the beneficiary of the trust, "is currently incarcerated at River North Correctional Center under a life sentence." Steven requested that the circuit court permit him to resign and either appoint a replacement trustee or simply terminate the trust and disburse the trust funds directly to an inmate trust account maintained for his brother's benefit. Since Bradshaw was incarcerated as the result of a felony conviction, the circuit court first

appointed a guardian ad litem ("GAL") to represent his interests. *See* Code § 8.01-9. The GAL subsequently filed an answer to the petition on behalf of Bradshaw. The GAL agreed to Steven's request to be removed as trustee, to terminate the trust, and to distribute the trust assets into Bradshaw's inmate trust account.

Hence, the circuit court held a hearing to consider the petition. Bradshaw appeared telephonically and upon his request, the circuit court permitted him to represent himself at the hearing since the GAL failed to appear. Finding that the parties agreed to the requested relief as proposed by Steven, the circuit court granted the requested relief and directed the counsel for Steven to "prepare an order terminating the trust and pay the money over to the gentleman as we described." On October 24, 2022, the circuit court entered a final order granting Steven's motion to resign as trustee, terminating the trust, and ordering the remaining principal and income to be paid into Bradshaw's inmate trust account. The final order also awarded reasonable attorney fees and costs to the trustee's counsel "to be paid from Trust assets," and $1,250 to the guardian ad litem for her services relating to the proceeding. The record indicates that an invoice prepared by the GAL documenting her work on the case was included with the final order when submitted to the circuit court. This invoice documented that the GAL incurred $1,250 in fees at an hourly rate of $250 per hour.

After receiving a copy of the final order, on November 4, 2022, Bradshaw wrote to his GAL expressing disagreement with the award of fees and costs in the order and asking her to assist him in having the circuit court modify the order. Bradshaw, acting *pro se*, mailed a letter dated November 7, 2022, to the presiding judge, challenging the fee awards to both the trustee's counsel and the GAL, arguing that under the terms of Watson's will, Watson's estate should bear those costs.[1] In

---

[1] The GAL and counsel for the trustee are listed in the letter as recipients of carbon copies.

the letter, Bradshaw asked the circuit court to amend its final order, remove the awards to the trustee's counsel and the GAL, and direct that the entirety of the trust funds be paid to Bradshaw. The trustee, by counsel, responded by letter mailed directly to the presiding judge arguing that the final order correctly reflects that the trust is responsible for the costs of the litigation. Subsequently, the circuit court sent an email to the trustee's counsel and the GAL advising them that he had received a letter directly from Bradshaw, but because the GAL represented Bradshaw, the circuit court would "treat [the letter] as an ex parte communication" and was "not going to read it." Bradshaw, again acting *pro se*, appealed from the circuit court's final order before sending another letter to the circuit court, *pro se*, expanding on the arguments in his previous letter and renewing his motion to amend the final order.[2]

## II. ANALYSIS

A. *Standard of Review*

"We review an award of attorney's fees for abuse of discretion." *Lambert v. Sea Oats Condo. Ass'n, Inc.*, 293 Va. 245, 252 (2017) (citing *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 429 (2012)).

B. *This Court has jurisdiction to hear this appeal because Bradshaw had no opportunity to contemporaneously object to the order of the trial court.*

As a preliminary matter, due to the unusual procedural history in this case, we choose sua sponte to address whether Bradshaw's assignment of error was preserved for appeal. Rule 5A:18 states "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." However, Code § 8.01-384 states in relevant part, "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an

---

[2] Bradshaw's GAL did not file a motion to amend on his behalf.

- 4 -

objection shall not thereafter prejudice him on motion for a new trial or on appeal." "Plainly, this provision 'requires appellate courts to consider issues on appeal that do not satisfy the contemporaneous objection requirement when the litigant had no opportunity to make the requisite timely objection.'" *Jacks v. Commonwealth*, 74 Va. App. 783, 792 (2022) (en banc) (quoting *Maxwell v. Commonwealth*, 287 Va. 258, 265 (2014)). This exception applies when a litigant is denied the opportunity to make a contemporaneous objection "through no fault of his own." *Commonwealth v. Amos*, 287 Va. 301, 306 (2014).

In *Maxwell v. Commonwealth*, the trial court recessed while the jury deliberated upon guilt. 287 Va. at 262. The parties left the courtroom during this time. *Id.* It later came to defense counsel's attention that during the recess, the jury made certain inquiries of the court, which the court answered without waiting for the parties to return. *Id.* at 262-63. On appeal, the Supreme Court decided that "by its plain language, Code § 8.01-384(A) prevents Maxwell from being prejudiced on appeal due to his lack of opportunity to make an objection contemporaneously with the court's act of proceeding in his absence." *Id.* at 267.

Similarly, in *Commonwealth v. Amos*, the Supreme Court addressed a situation in which the trial court held a witness in a criminal prosecution in contempt and remanded her to the custody of the sheriff without giving her any opportunity to address the court. 287 Va. at 304. The Supreme Court found that "the exception is appropriate when circumstances such as those in this case arise" and concluded that because "the actions of the trial court prevented Ms. Amos from presenting a contemporaneous objection . . . the contemporaneous objection exception of Code § 8.01-384(A) applies and no further steps were required to preserve her issues for appellate review." *Id.* at 309.

Likewise, in *Jacks v. Commonwealth*, "Jacks was convicted in the general district court for driving while intoxicated." 74 Va. App. at 787. He appealed his conviction to the circuit court on June 16, 2020, more than ten days after his conviction on March 16, 2020. *Id.* The circuit court

denied the appeal as untimely. *Id.* Jacks noted an appeal arguing that because emergency orders issued by the Supreme Court in response to the Covid-19 pandemic tolled the filing deadline of Code § 16.1-132, the circuit court's denial of his appeal was in error. *Id.* Sitting en banc, this Court concluded that:

> Jacks had no opportunity to object to the circuit court's ruling at the time it was made. Because the circuit court mistakenly believed Jacks's appeal was untimely, it denied the appeal *sua sponte*, without a hearing, and outside the presence of Jacks or his counsel. In that way, Jacks lacked an opportunity to make a contemporaneous objection not through any fault of his own, but rather because the circuit court misunderstood the relevant procedural law when Jacks noted his appeal.

*Id.* at 792 (internal citations omitted).

Here, Bradshaw received the already executed final order of the circuit court. He did not see a draft of the order prior to its entry, nor does the record indicate that he had any contact with his GAL before she signed and submitted the final order to the circuit court for entry. Upon receiving a copy of the final, entered order, Bradshaw drafted a letter to the circuit court stating his objections to the final order and requesting that the circuit court reconsider the order. Upon receipt, the circuit court refused to read the letter, construing it as an ex parte communication. Bradshaw also wrote to his GAL expressing his objections to the order and requested her assistance in achieving a modification of the order. We note that the record is bereft of any indication that the GAL ever attempted to raise Bradshaw's concerns with the circuit court. Thus, Bradshaw was unable to make his objection known to the circuit court. This unfortunate situation occurred as a result of the circuit court reasonably failing to read the letter constituting an objection because Bradshaw was represented by a GAL who failed to bring the concerns of her client before the circuit court after being requested to do so by her client. Based on these unique facts, we find that Bradshaw, through no fault of his own, was denied the opportunity to contemporaneously object to the order of the circuit court. Therefore, pursuant to Code § 8.01-384(A), the appeal of the award of attorney fees

and costs as well as the award of GAL fees was preserved, and this assignment of error is properly before this Court and will therefore be addressed on its merits.

C. *The circuit court did not abuse its discretion in awarding reasonable fees and costs.*

Bradshaw contends that the circuit court abused its discretion by including in its final order an award of attorney fees and costs to be paid from the corpus of trust funds. Bradshaw makes three arguments in support of this position: (1) that the circuit court's oral pronouncement upon the conclusion of the hearing did not include this award, and therefore its inclusion in the written order was error; (2) the terms of the will which created the trust forbade payment of costs and fees from the trust corpus; and (3) that the fees awarded were unreasonable.[3] We disagree.

Bradshaw presents several cases, many from federal courts, supporting his basic proposition that because a defendant has a right to be present when he is sentenced, "if a conflict arises between the orally pronounced sentence and the written judgment, then the oral sentence controls." *United States v. Rogers*, 961 F.3d 291, 296 (4th Cir. 2020) (citing *United States v. Diggles*, 957 F.3d 551, 555, 557 (5th Cir. 2020)). He argues that the circuit court failed to award any attorney fees, GAL fees, or costs by pronouncement from the bench during the hearing and therefore any award of attorney fees, GAL fees, or costs in the final order was in error. However, the cases cited by Bradshaw specifically apply only to criminal sentencing and have no bearing upon this strictly civil matter.

---

[3] The dissent finds error with the trial court because Bradshaw was not a named party to the case and therefore could not have costs assessed against him. The dissent also finds the trial court erred by allowing Bradshaw to continue pro se at the hearing without first properly examining if his waiver of counsel was sufficiently knowing and intelligent. Bradshaw does not make these arguments, nor does his assignment of error encompass either. Therefore, we do not consider them. Rule 5A:20(e).

Bradshaw also contends that the terms of the will required that the payment of the subject fees and costs were to be paid from Watson's residuary estate not from the trust corpus. We disagree.

Bradshaw relies upon three provisions in Watson's will. First, Bradshaw relies on Article I's provision: "I direct that all of my lawful unsecured debts, funeral expenses, expenses of my last illness, expenses of administration and taxes owed by my estate whether as a consequence of my death or otherwise, be paid out of my residuary estate without apportionment among the beneficiaries of my estate." Bradshaw contends that the attorney fees, GAL fees, and costs awarded by the circuit court in the final order are "expenses of administration" within the contemplation of Article I and therefore are to be paid out of the residuary of Watson's estate rather than the trust corpus. However, Bradshaw cites no authority for this interpretation of the will. Since Article III created the trust, we find that the plain meaning of Article I applies to the expenses of administering the decedent's estate, not the expenses in administering the trust created for Bradshaw's benefit.

Bradshaw next cites to Article III of the will: "[t]o the extent permitted by law, neither the principal nor income shall be liable for the debts of any beneficiary." Read in conjunction with the aforementioned provision in Article I along with the allocation of $50,000 to a trust for Bradshaw's benefit, Bradshaw seemingly argues that he was entitled to take the trust assets free and clear of any costs and that the fees and costs awarded by the order were "debts of the beneficiary [Bradshaw]" within the meaning of Article III of the will. Once again, Bradshaw cites no authority in support of this assertion. Although we acknowledge that this provision in Article III appears to be designating the resulting trust as a spendthrift trust, generally barring Bradshaw's creditors from being able to reach the assets of the trust in satisfaction of his debts, Article III does not preclude the circuit court from awarding costs and fees from the trust principal as it has done here.

Article III of the will included a provision stating: "In addition to the powers granted by law, I grant to my Trustee those powers set forth in Section 64.1-57 of the Code of Virginia, as in force from time to time, and I incorporate that Code Section in said trust by this reference." Although Code § 64.1-57 has been repealed and replaced by Code § 64.2-105(12), the new provision allows a trustee

> [t]o employ and compensate, out of the principal or income, or both as to the fiduciary seems proper, agents, accountants, brokers, attorneys-in-fact, attorneys-at-law, tax specialists, licensed real estate brokers, licensed salesmen, and other assistants and advisors deemed by the fiduciary to be needful for the proper administration of the trust or estate . . . .

This provision prevents the conclusion that Watson intended to completely insulate the $50,000 trust principal from any costs related to the trust.

In addition, Virginia law clearly contemplates trust assets being used to cover trust expenses including legal fees and costs. For example, Code § 64.2-762 provides that "[a] trustee is entitled to be reimbursed out of the trust property, with interest as appropriate, for: (1) Expenses that were properly incurred in the administration of the trust . . . ." Also, Code § 64.2-778(A)(15) provides that a trustee may "[p]ay taxes, assessments, compensation of the trustee and of employees and agents of the trust, and other expenses incurred in the administration of the trust[.]" Code § 64.2-1065(A)(5) even permits for the disbursal of trust principal to pay "an expense of an accounting, judicial or nonjudicial proceeding, or other matter that involves primarily principal, including a proceeding to construe the terms of the trust or protect property[.]"

Therefore, we are unconvinced by Bradshaw's argument that an award of attorney fees and costs was precluded by Watson's will. No provision in the will forbade the award here, and the Code of Virginia expressly authorizes payment of certain trust expenses including fees for legal proceedings and attorney fees from trust assets. Further, Watson's will, by incorporation, expressly authorized the trustee to pay attorney fees and costs from the trust assets, thus undermining any

- 9 -

argument that the testator sought to insulate the $50,000 in trust principal from the payment of any expenses.

Finally, Bradshaw seems to assert that the award of fees and costs here was unreasonable by suggesting that the GAL did not earn the fees she claimed and that the trustee petitioned the circuit court for his own benefit, not Bradshaw's, and therefore was not entitled to attorney fees and costs paid from the trust principal. Initially, we find that the issue of whether to award GAL fees is squarely within the discretion of the trial court. The record indicates that the trial court had the GAL's invoice before it when it decided to enter the proposed final order, and by implication the circuit court credited the invoice and found the award of fees reasonable when it entered the proposed final order. Since we cannot conclude that no reasonable jurist could have credited the invoice, and found the award of fees reasonable, we find no error.[4] Bradshaw cites various cases in which awards to executors were found to be unreasonable because the executor was acting in his own rather than the beneficiary's interest. However, once again, since we cannot find that no reasonable jurist would have concluded that his trustee acted reasonably for the benefit of Bradshaw, we decline to disturb the payment of the attorney fees and costs incurred by the trustee from the trust principal.

### III. CONCLUSION

Thus, we disagree with Bradshaw's contention that the circuit court abused its discretion in awarding reasonable costs and fees to the trustee and guardian ad litem from the trust corpus and affirm the order of the circuit court.

*Affirmed.*

---

[4] The dissent specifically relies upon the substantial service requirement of Code § 8.01-9 to conclude that the trial court erred in granting the GAL fees. We note that Bradshaw does not invoke Code § 8.01-9, and therefore we do not apply it. Rule 5A:20(e).

Causey, J., dissenting.

Bradshaw was not a party to this suit. The trial court exceeded its authority in assessing fees against Bradshaw by erroneously appointing a GAL for Bradshaw, finding that Bradshaw's GAL rendered "substantial service" as required by Code § 8.01-9, and awarding fees that neither the GAL nor petitioner's counsel argued at trial in violation of Bradshaw's constitutional right to due process. Furthermore, the trial court erred by not performing a colloquy before allowing a person it had found to be incapacitated (Bradshaw) to proceed without counsel. For these reasons, I respectfully dissent.

I. Fees

A. Petitioner's Attorney Fees

It was error for the trial court to award attorney fees to petitioner's counsel to be paid by the nonparty, Bradshaw. Our Supreme Court has clarified that "[w]hile '[a]n executor may, in good faith, seek the aid of counsel in the [e]xecution of his duties,' he is not entitled to attorneys' fees and legal costs simply because they were incurred in good faith." *Galiotos v. Galiotos*, 300 Va. 1, 12-13 (2021) (second and third alterations in original) (quoting *Clare v. Grasty*, 213 Va. 165, 170 (1972)). "The attorneys' fees and costs must be for services that aid the executor in the performance of his duties and are beneficial to the estate." *Id.* at 13; *see also O'Brien v. O'Brien*, 259 Va. 552, 557-58 (2000) (holding that an executor was rightfully denied attorney fees because the fees "were incurred for his personal benefit and not to benefit the estate or to aid him in his duties as an executor").

Here, it was an abuse of discretion to find that petitioner's counsel services aided the executor in the performance of his duties. Bradshaw did not contest Steven's course of action in resigning as executor and terminating the trust. Further, as reflected in the record, the trial court reached out to the parties, noting that "there seems to be an agreement that the trust should be

- 11 -

terminated." The trial court went on to inform the parties that if they submitted an agreed order to that effect, the court would enter the order and the hearing would not be necessary. Ultimately, the hearing went forward, and as the transcript reflects, Bradshaw did not contest the termination of the trust nor the distribution of funds to his inmate account. Although the trustee may have brought this petition in good faith, petitioner's attorney fees and costs did not aid the trustee in his performance of his duties. Petitioner's course of action was uncontested by Bradshaw and forcing Bradshaw to bear these unnecessary legal fees is unjust. Simply put, there was no need for aid and direction because the court and the parties agreed prior to the hearing. Therefore, I would find that it was an abuse of discretion to award both the GAL fees and the petitioner's attorney fees.

## B. GAL Fees

Bradshaw was appointed a GAL under Code § 8.01-9. As a preliminary matter, the Virginia legislature has provided a right to counsel in civil cases for defendants under a disability. *See* Code § 8.01-9. Code § 8.01-9 allows the appointment of a GAL—and the assessment of fees for that GAL—only for "[a] suit wherein a person under a disability is a party *defendant*." (Emphasis added). A "'[p]erson under a disability' . . . include[s] . . . a person convicted of a felony during the period he is confined." Code § 8.01-2. However, in this case, the trial court erred when it appointed a GAL for Bradshaw. Despite his incarceration, Bradshaw does not qualify for a GAL under § 8.01-9 because he was not a defendant. Moreover, Bradshaw was not even a named party. Bradshaw appeared as the beneficiary of the trust, concurring with the trustee's petition to the court. As he was not a named defendant, the court cannot assess Bradshaw the GAL fees under Code § 8.01-9.

Since Bradshaw is not a defendant in this matter the trial court abused its discretion in finding him eligible to a right to counsel and appointing a GAL to represent him under Code

- 12 -

§ 8.01-9.  Therefore, Bradshaw should not have to bear the burden of cost of counsel he never requested, never received, and was never authorized to be assigned under Code § 8.01-9.  Indeed, any interpretation that Code § 8.01-9 automatically entitles all incarcerated persons to a GAL in their civil suits, regardless of whether they are a defendant or other party, would lead to an inequitable result.  Although ideal, it would also provide incarcerated people with a blanket civil right to counsel that is badly needed, yet denied, for many law-abiding Virginia citizens.

Bradshaw is not a party to the case and should not be assessed any fees as a nonparty.  Costs and fees in any case should only be assessed against the named parties.  Here, a petition was filed by a trust's executor for aid and direction.  Bradshaw himself was not ever named as a party to this suit.  Although the petition was served on Bradshaw because he was the sole beneficiary of the trust, the record is void of any evidence of him being a named party before the trial court.  And as noted by the court, they agreed.  Therefore, if Bradshaw did not file the suit nor is he listed as a defendant/party, he should not be held responsible for *all* fees and costs associated with the suit.[5]

Even if Code § 8.01-9 did permit the GAL's appointment, the GAL in this matter failed to meet the statutory burden of rendering "substantial service" in representing her client's interests in order to receive compensation.

> When, in any case, the court is satisfied that the guardian ad litem has rendered substantial service in representing the interest of the person under a disability, it may allow the guardian reasonable

---

[5] In other states, courts have likewise held that nonparties may not be assessed attorney fees in various cases.  *See, e.g.*, *Hartloff v. Hartloff*, 745 N.Y.S.2d 363 (N.Y. App. Div. 4th Dept. 2002) (holding that the trial court did not have jurisdiction to assess counsel fees, costs, and sanctions against nonparties, where the nonparties had not been named as defendants in the action, had not been served with process notifying them of any claim for money damages, and had not been afforded the opportunity to defend such claim).  *See also NRD Partners II, L.P. v. Quadre Investments, LP*, 875 S.E.2d 895, 899 (Ga. Ct. App. 2022) (holding that the trial court could not award attorney fees against a nonparty in a contempt sanction).

- 13 -

> compensation therefor, and his actual expenses, if any, to be paid
> out of the estate of the defendant.

Code § 8.01-9.  In this case, there is no such finding in the court order granting the GAL's fees, no argument for GAL fees, and one would be hard pressed to find facts in the record that support a finding that such substantial services existed.

After being appointed, the GAL filed a half-page reply to the petition for aid and direction, failed to appear at the sole video/telephonic hearing, and filed a response to this appeal agreeing with the appellee—against her client's interests.  Meanwhile, Bradshaw filed his own initial answer to the petition for aid and direction, filed his own motion to allow himself to appear for the court proceedings via video conference, represented himself at the hearing, attempted to lodge his objections with the court, and has defended his own appeal.  The GAL's failure to attend trial or relay a client's valid objection to the court order could be considered a per se failure to render substantial services to a client.

Based on the record before this Court, there is no evidence to support that the GAL fulfilled the requirement of Code § 8.01-9 that the GAL render "substantial service in representing the interest" of Bradshaw and, therefore, her fees may not be awarded.

C.  Attorney Fees versus Trust Expenses

The majority errs by couching the trial court's award of attorney fees as trust expenses. "It is well-established that a court speaks only through its written orders."  *S'holder Representative Servs., LLC v. Airbus Ams., Inc.*, 292 Va. 682, 690 (2016).  Here, the court did not expressly find that the attorney fees were trust fees, it simply directed that the fees be paid out of trust assets.  Without a finding that the attorney fees were trust expenses, this Court may not affirm the award on appeal.

Furthermore, the court order made an award of "reasonable attorneys' fees" to petitioner's counsel without any argument or evidence of attorney fees being presented at trial.

- 14 -

Additionally, this award was not included in the judge's ruling from the bench. "[A]n attorney who seeks to recover legal fees . . . must establish, as an element of the attorney's *prima facie* case, that the fees charged . . . are reasonable." *Chawla v. BurgerBusters, Inc*., 255 Va. 616, 623 (1998) (second and third alterations in original) (quoting *Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship*, 253 Va. 93, 96, (1997)).

> In determining whether a party has established a *prima facie* case of reasonableness, a fact finder may consider, *inter alia*, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate.

*Id.* Although the trial court made an award of reasonable attorney fees, there is no evidence in the record to support that the attorneys in this case ever established a prima facie case of reasonableness. No evidence was presented or heard at trial. In fact, the transcript of the hearing in this matter is void of any mention of attorney fees. Furthermore, Bradshaw did not receive any notice of the award of attorney fees prior to receiving a copy of the executed order and never had a chance to object to the award. Therefore, it was error for the trial court to award attorney fees without the attorney establishing their prima facie case for the fees.

Unlike the majority, I do find Bradshaw's argument convincing that if attorney fees should be paid, they must be paid out of the residuary of the estate, not the principal of the trust. As noted above, this was an uncontested proceeding to remove Steven as trustee and terminate the trust. Bradshaw did not object to this course of action, and the court even noted that the parties seemed to agree regarding the disposition of the trust. Therefore, I agree that if anything this was an expense of the administration of the estate, not a necessary trust expense. Again, there was no need of aid nor direction. Accordingly, I would find that if attorney fees must be granted, they must be granted from the residuary estate, not the principal of the trust.

- 15 -

## D. Bradshaw's Due Process Constitutional Right

Furthermore, attorney fees cannot be retroactively awarded without evidence or testimony presented at trial. At the conclusion of the hearing, the trial court asked petitioner's counsel to "prepare an order terminating the trust and pay the money over to the gentleman as described." Counsel responded that he would prepare the order and "circulate it, and [he would] bring [the GAL] up to speed as well." Following this exchange, there was a lengthy discussion regarding the proper place and manner for both the order and the funds to be sent to Bradshaw. Notably, the issue of attorney fees was never brought to the trial court's attention, and no affidavit of attorney fees incurred was submitted. Counsel drafted an order, which the trial court subsequently signed, which did not reflect the court's ruling from the bench as memorialized in the trial transcript—instead, the order counsel drafted added two provisions requiring Bradshaw to pay an open-ended "reasonable fee" not articulated at trial or in evidence. Trustee's counsel retained $6223.50 for these purposes.

Clearly, the written order is not the same as the judge's ruling from the bench. As a preliminary concern, the court should be able to trust the attorneys practicing before it to transcribe judicial orders that accurately reflect what was ordered—and only such concessions as were ordered—at trial. As a secondary concern, the addition of elements into a judicial order that constitute considerable deprivations of property, without putting a party on notice or providing an opportunity to be heard, creates a constitutional due process violation.

The Supreme Court of the United States "consistently has held that some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *see also Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974) ("The requirement for some kind of a hearing applies to the taking of private property."). "[T]he right to be heard before being condemned to suffer grievous loss of any kind, even though it may not

- 16 -

involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring).

This due process interest is explicit not only in the Fifth Amendment of the United States Constitution, but also the Constitution of the Commonwealth of Virginia's guarantee "[t]hat no person shall be deprived of his life, liberty, or property without due process of law." Va. Const. art. I, § 11; U.S. Const. amend. V. This fundamental principle of our justice system requires that Bradshaw be given notice and the opportunity to be heard on the matter of these significant attorney fees. *See Mathews*, 424 U.S. 319. Attorney fees should not be slipped into a judicial order after a hearing in which both attorneys failed to request them or submit evidence of them. To surprise Bradshaw with attorney fees in entry of the order, from an undisputed hearing for petition for aid and direction, is not warranted here.

## II. Intelligent and Voluntary Waiver of Right to Counsel

The trial court further erred by allowing Bradshaw to waive the right to counsel (the GAL) during the hearing and represent himself. Once it ruled that Bradshaw required a GAL, the court was obligated to ensure that his right to that counsel was upheld during the pendency of the proceedings. Although the right to counsel is a fundamental constitutional right in criminal cases, a defendant may decide to waive his Sixth Amendment right to counsel. *Faretta v. California*, 422 U.S. 806, 814 (1975). However, "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972). "To be valid, any such waiver must be the voluntary act of the defendant and must constitute a knowing and intelligent abandonment of a known constitutional right or privilege." *McNair v. Commonwealth*, 37 Va. App. 687, 695 (2002) (citing *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)).

In addition to the constitutional protections regarding waiver of the right to counsel, the General Assembly further prescribed the necessary steps for waiver in the Commonwealth of Virginia. The Code of Virginia requires that when a person, who is not represented by counsel, is accused of a crime for which incarceration may be the penalty the court is required to "ascertain by oral examination of the accused whether or not the accused desires to waive his right to counsel." Code § 19.2-160. If the accused chooses to waive his right to counsel and the court determines that such waiver is voluntarily and intelligently made, the court is required to provide the accused with a statement to be signed by the accused to document his waiver. *Id.* The waiver of right to counsel is detailed in the Code of Virginia and strictly adhered to in court proceedings.

Here, the trial court made no determination that Bradshaw voluntarily, knowingly, or intelligently waived his right to counsel. The trial court, on its own volition, found it necessary to appoint a GAL for Bradshaw. However, the same trial court who found that Bradshaw required a GAL also found it appropriate to proceed in the GAL's absence.[6] The trial court did so without asking Bradshaw a single question regarding his waiver of right to counsel. Once petitioner's counsel was unable to establish contact with the GAL, Bradshaw asserted, "Your Honor, I'm prepared to proceed without [the GAL]," to which the court responded, "Yeah. I was going to say--go ahead sir. Go ahead sir." Thus, the trial court finding Bradshaw incapacitated and classifying him as under a disability, then allowing him to proceed without offering even a brief colloquy regarding the waiver of right to counsel, was an abuse of discretion. I would hold

---

[6] The GAL acknowledged receipt of the notice of hearing and even noted she planned to appear in person to make it easier to communicate with Bradshaw. The record makes it clear that both petitioner's counsel and the trial court believed the GAL would be appearing in person the day of the hearing. In fact, counsel for the petitioner tried to reach the GAL at the start of the proceedings, however, her phone went straight to voicemail. There is no evidence in the record to support that the GAL notified anyone that she could no longer attend the proceeding.

that the same colloquy required for a criminal defendant to waive their right to counsel in the Commonwealth of Virginia should also be required in civil cases where there is a right to counsel. Summarily, when a statute requires the right to counsel, the statute inherently also requires a knowing, voluntary, and intelligent waiver of that right to counsel. To hold otherwise would fail to effectuate the intent of the statutory protections provided to civil defendants by Code § 8.01-9.

### III.  Right to Civil Counsel

Finally, all civil defendants should be entitled to the right to counsel, regardless of disability. Code § 17.1-606 allows circuit courts in the Commonwealth of Virginia to assign counsel to any person who is

> (i) a plaintiff in a civil action in a court of the Commonwealth and a resident of the Commonwealth or (ii) a defendant in a civil action in a court of the Commonwealth, and who is on account of his poverty unable to pay fees or costs, may be allowed by a court to sue or defend a suit therein, without paying fees or costs.

The statute further provides that the person "shall have, from any counsel whom the court may assign him, and from all officers, all needful services and process, without any fees, except what may be included in the costs recovered from the opposite party." *Id.*

A study titled "Virginia Self-Represented Litigants Study," published by the National Center for State Courts, found that most civil cases in the Commonwealth have at least one unrepresented party. John E. Whitfield, *The Sobering Findings of the Virginia Self-Represented Litigants Study*, Va. Lawyers Weekly, June 2018, at 20. According to this study "[t]he traditional court model, in which both parties have legal representation, occurred in only one percent of district court cases." *Id.* at 21. The study also found that in juvenile and domestic relations district courts "neither party had representation in 87 percent of the cases, and only six percent of adult cases involved counsel representing both sides." *Id.* Further, the study found

that in circuit court, 38 percent of cases had counsel for both parties. *Id.* In a sobering reality, the study revealed that "the greater extent of poverty in a locality, the more likely it is that parties would be unrepresented." *Id.* at 21-22. Not surprisingly, the study found that "[r]epresentational status has a clear impact on case outcomes, particularly when only one side or the other is represented." *Id.* at 23.

While the General Assembly has allowed for access to counsel in civil suits, as discussed above, many litigants are left to endure the legal system without the assistance of counsel. In this case however, simply because Bradshaw is incarcerated it is presumed that he is entitled to counsel in his civil suit. However, law abiding citizens are routinely denied access to counsel in their civil trials. Persons who are at risk of losing their home, children, employment, subject to garnishments, and various other civil suits are often forced to proceed without the assistance of counsel. But here, Bradshaw, who is serving a life sentence for taking the life of another, was presumed to have the statutory right to an attorney in his civil trial and received said counsel. Courts should more liberally use their powers under Code § 17.1-606 to protect law-abiding Virginia citizens in their civil suits and ensure equal access to justice in civil trials.

## CONCLUSION

For these reasons, I would find that the trial court erred by appointing a GAL for Bradshaw under Code § 8.01-9 because he was not entitled to counsel pursuant to this statute. I would also find that the trial court abused its discretion by awarding costs, GAL fees, and attorney fees to be paid by a nonparty in a suit, without notice. Bradshaw should not have to bear the cost of a suit that he did not bring and did not name him as a party. Further I would find that the trial court erred by not performing a colloquy to determine that Bradshaw was making a voluntary, knowing, and intelligent waiver of counsel. Therefore, I would reverse the trial

- 20 -

court's award of the GAL and petitioner's costs and attorney fees and remand this case for

further proceedings, consistent with this dissent.